IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**DAVID A. MCCOY,**

       **Plaintiff,**

  vs.                                               **Civil Action 2:13-cv-1088**
                                                              **Judge Smith**
                                                               **Magistrate Judge King**

**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

REPORT AND RECOMMENDATION

     This is an action instituted under the provisions of 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security denying plaintiff's applications for a period of disability, disability insurance benefits, and supplemental security income.  This matter is now before the Court on *Plaintiff's Statement of Errors* ("*Statement of Errors*"), Doc. No. 9, the Commissioner's *Opposition to Statement of Errors*, Doc. No. 16, and *Plaintiff's Reply*, Doc. No. 17.

**I.    Background**

     Plaintiff David A. McCoy protectively filed his applications for benefits in November 2010, alleging that he has been disabled since May 1, 2008.  *PAGEID* 237-49.  The applications were denied initially and upon reconsideration, and plaintiff requested a *de novo* hearing before an administrative law judge.

     An administrative hearing was held on May 11, 2012, at which plaintiff, represented by counsel, appeared and testified, as did

William Tansy, who testified as a vocational expert. *PAGEID* 71. In a decision dated May 23, 2012, the administrative law judge concluded that plaintiff was not disabled from May 1, 2008, the alleged disability onset date, through the date of the administrative decision. *PAGEID* 66. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on September 6, 2013. *PAGEID* 46.

Plaintiff was 52 years of age on the date of the administrative law judge's decision. *See PAGEID* 66, 237. He has a limited education, is able to communicate in English, and has past relevant work as a maintenance man. *PAGEID* 64-65. Plaintiff was last insured for disability insurance purposes on December 31, 2012. *PAGEID* 58. He has not engaged in substantial gainful activity since May 1, 2008, his alleged date of onset of disability. *Id*.

**II. Medical Evidence[1]**

Plaintiff began treatment at Tri-County Mental Health and Counseling Services, Inc., on August 20, 2002. *PAGEID* 334. Plaintiff reported that he was depressed, nervous, anxious, had difficulty falling asleep, lacked motivation, and did not like being around people. *PAGEID* 335. In the prior 12 months, he had frequently found himself thinking about drinking or getting high and frequently used alcohol or drugs to relieve emotional discomfort such as sadness, anger, or boredom. *PAGEID* 336. On examination, plaintiff was

---

[1] The Court's discussion of the medical evidence is limited to the issues raised in plaintiff's *Statement of Errors*. Plaintiff does not challenge the administrative law judge's evaluation of his physical impairments.

2

dysthymic, cooperative, and oriented x 4. *PAGEID* 337. Plaintiff was assigned a global assessment of functioning score ("GAF") of 51[2] and diagnosed with major depressive disorder, recurrent, severe, and generalized anxiety disorder. *PAGEID* 338. Treatment at Tri-County Mental Health and Counseling Services, Inc., was involuntarily terminated because of plaintiff's violation of attendance policy. Treatment notes indicate that plaintiff "was not motivated." *PAGEID* 334.

Psychologist Terry Hayes, Ph.D., evaluated plaintiff on December 15, 2010. *PAGEID* 346-47. Plaintiff reported a history of daily alcohol abuse during his teenage years until the age of 40. *PAGEID* 346. Plaintiff reported a history of depression, general sadness, decreased activity level, anhedonia, anxiety, short and long-term memory problems, and "possible AH (voices, mumbling) and tactile hallucination (bed moving)." *PAGEID* 346-47. Plaintiff also endorsed anger episodes, decreased appetite, racing thoughts, sweaty palms, shortness of breath, and difficulty being around people. *PAGEID* 347. On examination, plaintiff was cooperative, oriented x 4, and demonstrated poor eye contact, dysphoric/anxious speech, dysphoric/very anxious mood, and congruent affect. *PAGEID* 347. Dr.

---

[2]
> "The GAF scale is a method of considering psychological, social, and occupational function on a hypothetical continuum of mental health. The GAF scale ranges from 0 to 100, with serious impairment in functioning at a score of 50 or below. Scores between 51 and 60 represent moderate symptoms or a moderate difficulty in social, occupational, or school functioning . . . ."

*Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 433, 436 n.1 (6th Cir. 2012).

Hayes assigned a GAF of 50 and diagnosed mood disorder, NOS; panic disorder with agoraphobia; cognitive disorder, NOS; and alcohol dependence, in reported sustained full remission. *Id*. Dr. Hayes also completed a mental functional capacity assessment in which he opined that plaintiff was markedly limited in 12 of 20 areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *PAGEID* 344. Plaintiff was moderately limited in six areas and not significantly limited in the remaining two areas of functioning. *Id*. According to Dr. Hayes, plaintiff's mental functional limitations would last between nine and 11 months. *Id*.

Todd Finnerty, Psy.D., reviewed the record on January 14, 2011, and completed a residual functional capacity assessment. *PAGEID* 102-04. Dr. Finnerty opined that plaintiff was moderately limited in his ability to (1) remember locations and work-like procedures; (2) understand and remember detailed instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) sustain an ordinary routine without special supervision; (6) work in coordination with or in proximity to others without being distracted by them; (7) make simple work-related decisions; (8) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (9) interact appropriately with the general public; (10)

accept instructions and respond appropriately to criticism from supervisors; (11) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (12) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness; (13) respond appropriately to changes in the work setting; (14) travel in unfamiliar places or use public transportation; and (15) set realistic goals or make plans independently of others. *Id*. Dr. Finnerty opined that plaintiff "can perform srt without fast paced production quotas." *PAGEID* 103. Dr. Finnerty also completed a psychiatric review technique form on January 14, 2011. *PAGEID* 100-01. Dr. Finnerty found that plaintiff had an organic mental disorder, affective disorder, and an anxiety related disorder that resulted in moderate restriction in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace. *Id*.

Cynthia Waggoner, Psy.D., reviewed the record and, on February 28, 2011, affirmed Dr. Finnerty's assessment. *PAGEID* 123-24, 126-27.

**III. Administrative Hearing**

Plaintiff testified at the administrative hearing that he last worked in 2008 as a maintenance man at an apartment complex. *PAGEID* 79-81. Plaintiff was fired from that position because his manager "decided he didn't need [plaintiff] anymore" and brought "another guy in from another site to see if he could get by with doing the same jobs." *Id*. Plaintiff also testified that he was having difficulty

5

working because he had trouble remembering things that were not written down.  *PAGEID* 81.

Plaintiff testified that, in 2008, he drank alcohol on the weekends, but never on the job.  *PAGEID* 82.  Plaintiff currently drinks "probably" two beers, "[m]aybe three times a week."  *Id*.

Plaintiff testified that he has trouble with his memory.  *PAGEID* 79.  He could not remember treating at Tri-County Mental Health in 2002.  *PAGEID* 81.  Plaintiff also testified that he has trouble leaving his home and difficulty being around other people.  *PAGEID* 83, 88.  On the day of the hearing, plaintiff vomited twice before leaving home and once before entering the hearing.  *PAGEID* 83-84.  Plaintiff leaves his house approximately three times a month to go to the doctor and take his mother to the store.  *PAGEID* 84.  Plaintiff waits in the car when taking his mother to the store.  *Id*.  Plaintiff lives with his mother and helps her with the housework.  *PAGEID* 87.

On a typical day, plaintiff spends most of his time sleeping because of depression.  *PAGEID* 84.  He takes Ativan for anxiety, and he takes it at night because it "knocks [him] out."  *Id*.  Plaintiff smokes two or three packs of cigarettes a day because of nervousness.  *PAGEID* 86.  Plaintiff testified that he could not reliably go to work every day.  *PAGEID* 87.

The vocational expert characterized plaintiff's past relevant work as a maintenance man, performed at the light exertional level at an SVP of 4.  *PAGEID* 90.  The vocational expert was asked to

>assume a hypothetical individual approaching advanced age, with limited education and past work as discussed, who is capable of working only [INAUDIBLE] levels, but would be limited to routine, repetitive tasks; occasional production pace, occasional judgment, occasional decision making, occasional changes in the work setting, occasional interaction with the co-workers, and no interaction with the public.

*PAGEID* 90.  The vocational expert responded: "Well, the only limitation of the hypothetical that [INAUDIBLE] routine maintenance that he did, no contact with the public [INAUDIBLE] residents [INAUDIBLE]. Otherwise, job itself fits within the parameters of that hypothetical." *Id*.  The vocational expert testified that such an individual could also perform such jobs as janitor, price marker, and security monitor.  *PAGEID* 90-91.

**IV.  Administrative Decision**

The administrative law judge found that plaintiff's severe impairments consist of depression, generalized anxiety disorder, and substance abuse disorder. *PAGEID* 58.  The administrative law judge also found that plaintiff's impairments neither meet nor equal a listed impairment and leave plaintiff with the residual functional capacity ("RFC") to

>perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to work involving routine, repetitive tasks; occasional production pace; occasional judgment; occasional decision-making; occasional changes in the work setting; occasional interaction with co-workers; and no interaction with the public.

*PAGEID* 59-60.  Relying on the testimony of the vocational expert, the administrative law judge found that this RFC would permit the

7

performance of plaintiff's past relevant work as a maintenance man, as well as a significant number of other jobs in the national economy. *PAGEID* 64-66. Accordingly, the administrative law judge concluded that plaintiff was not disabled within the meaning of the Social Security Act from May 1, 2008, through the date of the administrative decision. *PAGEID* 66.

**V.   Discussion**

Pursuant to 42 U.S.C. § 405(g), judicial review of the Commissioner's decision is limited to determining whether the findings of the administrative law judge are supported by substantial evidence and employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389 (1971); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Buxton v. Haler*, 246 F.3d 762, 772 (6th Cir. 2001); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). This Court does not try the case *de novo*, nor does it resolve conflicts in the evidence or questions of credibility. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, this Court must examine the administrative record as a whole. *Kirk*, 667 F.2d at 536. If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if this Court would

decide the matter differently, *see Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion.  *Longworth,* 402 F.3d at 595.

Plaintiff argues, first, that the administrative law judge erred in evaluating the consultative psychological opinion of Dr. Hayes.  *Statement of Errors*, pp. 9-13.  Plaintiff specifically argues that Dr. Hayes' opinion should have been given significant weight because it was supported by Dr. Hayes' examination of plaintiff and there was no contradictory evidence in the record.  *Id.*

An administrative law judge is required to evaluate every medical opinion, regardless of its source.  20 C.F.R. §§ 404.1527(c), 416.927(c).  However, not every medical opinion is treated equally; the Commissioner's regulations describe three classifications for acceptable medical opinions: (1) nonexamining sources; (2) nontreating sources (or examining sources); and (3) treating sources.  As a one-time consultative psychological examiner, Dr. Hayes is properly classified as a nontreating source.  *See* 20 C.F.R. §§ 404.1502, 416.902 ("Nontreating source means a physician, psychologist, or other acceptable medical source who has examined [the claimant] but does not have, or did not have, an ongoing treatment relationship with [the claimant].").

The Social Security Administration accords the greatest weight to the opinions of treating sources; if an administrative law judge does not give "controlling weight" to the medical opinion of a treating source, he must provide "good reasons" for discounting that opinion.

9

*See Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5); *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 514 (6th Cir. 2010). "However, this requirement only applies to *treating* sources." *Ealy*, 594 F.3d at 514 (citing *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (emphasis in original)). With regard to nontreating sources such as Dr. Hayes, "the agency will simply '[g]enerally [] give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined'" him. *Id.* (quoting 20 C.F.R. § 404.1527(d)(1)). *See also Smith*, 482 F.3d at 875. In determining the weight to be given the opinion of a nontreating source, an administrative law judge should consider such factors as "the evidence that the physician offered in support of h[is] opinion, how consistent the opinion is with the record as a whole, and whether the physician was practicing in h[is] specialty." *Ealy*, 594 F.3d at 514 (citing 20 C.F.R. § 404.1527(d)).

Dr. Hayes conducted a psychological examination of plaintiff on December 15, 2010. *PAGEID* 346-47. Dr. Hayes assigned plaintiff a GAF of 50 and diagnosed mood disorder, NOS; panic disorder with agoraphobia; cognitive disorder, NOS; and alcohol dependence, in reported sustained full remission. *Id.* According to Dr. Hayes, plaintiff is markedly limited in 12 out of 20 areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation. *PAGEID* 344. Plaintiff is moderately limited in six areas of functioning and not significantly limited in

10

the remaining two areas. *Id.* Dr. Hayes further opined that plaintiff's mental functional limitations would last between nine and 11 months. *Id.*

The administrative law judge recognized Dr. Hayes as a consultative examiner and expressly considered his opinion, but afforded "no significant weight" to the opinion:

> As for the opinion evidence, on December 15, 2010, Dr. Hayes completed a Mental Functional Capacity Assessment and opined that the claimant was unemployable for nine to 11 months as he was markedly limited in 12 areas of functioning and moderately limited in 6 areas of functioning (Exhibit 2F). The undersigned gives no significant weight to this opinion as it was based on a one-time consultative evaluation of the claimant without the benefit of a treating relationship. The limitations on the assessment form appear to be based on the claimant's own report rather than due to objective findings. Further, the claimant indicated that he did not drink alcohol yet admitted at the hearing that he drinks alcohol on a regular basis and has done so for years. The evidence suggests that alcohol abuse is a significant factor in the claimant's functional capacity, yet Dr. Hayes was not provided the information necessary to consider the effects of this abuse. The evidence does not support the degree of limitation secondary to the claimant's mental problems as found by this psychologist. Additionally, the claimant is not going to counseling, AA meetings, or seeking any other kind of help for his mental conditions, yet he is able to see an internist for his physical complaints (Exhibits 3F and 4F) without any difficulty, which indicates that his mental conditions are not of the severity alleged, or he not [sic] find the limitations require attention.

*PAGEID* 63.

The administrative law judge's analysis is sufficiently specific as to the weight given to Dr. Hayes' opinion and the reasons for assigning that weight, and it is clear that the administrative law judge considered the appropriate factors in evaluating Dr. Hayes'

11

opinion.  The administrative law judge also provided sufficient reasons for assigning "no significant weight" to Dr. Hayes' opinion, and those reasons are supported by substantial evidence.  Notably, the overwhelming majority of Dr. Hayes' examination notes simply recite plaintiff's self-reported history, symptoms, and limitations.  *See PAGEID* 346-47.  It is true, as plaintiff argues, that a psychological evaluation is often dependent on the subjective presentation of the patient.  *See Winning v. Comm'r of Soc. Sec.*, 661 F.Supp.2d 807, 821 (N.D. Ohio 2009).  However, it is not improper for an administrative law judge to consider whether an opinion is dependent on the claimant's reports of symptoms and limitations, especially where, as here, the administrative law judge also finds that the claimant's reported symptoms and limitations are not entirely credible.[3]  *See PAGEID* 61.  Moreover, the administrative law judge was not required to adopt Dr. Hayes' opinion simply because Dr. Hayes was the only psychological source to examine plaintiff since 2002.  *See Ealy*, 594 F.3d at 514.  Accordingly, the Court finds no error in the administrative law judge's consideration of Dr. Hayes' opinion.

Plaintiff next argues that the administrative law judge erred in her RFC determination and posed an incomplete hypothetical to the vocational expert by failing to include the specific limitation of "without fast paced production quotas" in the RFC and resulting hypothetical.  *Statement of Errors*, pp. 13-14.  According to

---

[3] Significantly, plaintiff does not challenge the administrative law judge's credibility determination.

plaintiff, the administrative law judge was required to adopt that precise limitation in her RFC determination because it was included in the medical opinions of Drs. Finnerty and Waggoner, which were assigned significant weight by the administrative law judge. *Id*.

> The administrative law judge found that plaintiff had the RFC to
>
> > perform a full range of work at all exertional levels but with the following nonexertional limitations: limited to work involving routine, repetitive tasks; occasional production pace; occasional judgment; occasional decision-making; occasional changes in the work setting; occasional interaction with co-workers; and no interaction with the public.

*PAGEID* 60.  Plaintiff cites *Ealy*, 594 F.3d 504, for the proposition that the limitation "occasional production pace," contained in the RFC determination and posed to the vocational expert, does not appropriately incorporate the limitation "without fast paced production quotas" contained in the opinions of the state agency psychologists.  *Statement of Errors*, pp. 13-14; *Plaintiff's Reply*, pp. 2-3.  This Court disagrees.

A vocational expert's testimony in response to a hypothetical question can serve as substantial evidence if the question accurately portrays the claimant's physical and mental impairments. *Ealy*, 594 F.3d at 516.  In *Ealy*, the administrative law judge "relied on the vocational expert's testimony in response to a hypothetical question that stated, in relevant part, 'assume this person is limited to simple, repetitive tasks and instructions in non-public work settings.'"  *Id*. at 517.  The Sixth Circuit remanded the case because the hypothetical failed to adequately describe the claimant's moderate

13

difficulties in the areas of concentration, persistence, or pace. *See id*. (citing *Edwards v. Barnhart*, 383 F. Supp. 2d 920, 930-31 (E.D. Mich. 2005) (finding that a hypothetical limiting claimant to "jobs entailing no more than simple, routine, unskilled work" is not adequate to convey a moderate limitation in ability to concentrate, persist, and keep pace) ("Plaintiff may be unable to meet quotas, stay alert, or work at a consistent pace, even at a simple, unskilled, routine job."); *Whack v. Comm'r of Soc. Sec.*, No. 06-4917, 2008 U.S. Dist. LEXIS 14083, at *8 (E.D. Pa. Feb. 26, 2008) (citing cases for the proposition that hypothetical restrictions of "simple" or "low-stress" work do not sufficiently incorporate the claimant's medically established limitations where the claimant has moderate deficiencies in concentration, persistence, or pace)).

This is not a case where the administrative law judge completely omitted a limitation in the hypothetical posed to the vocational expert. Although the administrative law judge did not articulate plaintiff's limitations exactly in the precise words of Drs. Finnerty and Waggoner, she nevertheless adequately incorporated all of plaintiff's impairments in the hypothetical question to the vocational expert. Accordingly, the Court finds that the limitation to "occasional production pace" in plaintiff's RFC determination adequately reflects the opinions of Drs. Finnerty and Waggoner that plaintiff is limited to work "without fact paced production quotas." See 20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946 (the RFC assessment is expressly reserved to the Commissioner).

Plaintiff next argues that the administrative law judge erred at step four of the sequential evaluation in finding that plaintiff could perform his past relevant work as a maintenance man. *Statement of Errors*, pp. 14-15. Plaintiff specifically argues that it was error to rely on the vocational expert's testimony that plaintiff could perform his past relevant work because the vocational expert testified that plaintiff's past relevant work had an SVP of 4 and the hypothetical posed to the vocational expert limited plaintiff to work with an SVP of 2. *See id*. Plaintiff also argues that the administrative law judge erred in determining that plaintiff's work as a maintenance worker did not involve interaction with the public. *Id*. Plaintiff seeks remand for further development at step four. Plaintiff's argument is not well taken.

The administrative law judge did not end her analysis at step four of the sequential evaluation process; she continued to step five and found that plaintiff could perform other work that exists in significant numbers in the national economy. *PAGEID* 65-66. Plaintiff does not challenge the administrative law judge's findings at step five, and the error alleged by plaintiff at step four, relating to plaintiff's past relevant work, would not impact the administrative law judge's alternative conclusion that plaintiff could perform such jobs as janitor, price marker, and security monitor. An error, if any, in determining that plaintiff could perform his past relevant work would therefore be harmless. *See Lagore v. Comm'r of Soc. Sec.*, 4:12CV2626, 2014 WL 1383339, at *17 (N.D. Ohio Apr. 8, 2014)

15

("Moreover, even if the current ALJ had erred at Step Four by finding that Plaintiff could return to his past relevant work, the Court finds such an error harmless and remand of the case is futile since the current ALJ proceeded onward to Step Five of the analysis to determine that Plaintiff could perform a significant number of jobs occurring in the national economy."); *Gardner v. Comm'r of Soc. Sec.*, 1:12CV2498, 2014 WL 1116903, at *12 (N.D. Ohio Mar. 19, 2014) ("However, even if the ALJ erred in his Step Four analysis, the fact that the ALJ proceeded to make a Step Five alternate decision renders any error at Step Four harmless if substantial evidence supports the Step Five decision."); *Rice v. Comm'r of Soc. Sec.*, 12-CV-15690, 2014 WL 521045, at *8 (E.D. Mich. Feb. 10, 2014) ("'The ALJ did not end her analysis at step four — she continued to step five, and found that Plaintiff could perform other work that existed in significant numbers in the national economy. As such, an error at step four — *if any*—was harmless.'") (emphasis in original) (quoting *Dunnett v. Comm'r of Soc. Sec.,* No. 12-10930, 2013 WL 4604445, at *15 (E.D. Mich. Aug. 29, 2013)); *Stull v. Comm'r of Soc. Sec.*, 3:10-CV-00693, 2011 WL 830633 (N.D. Ohio Jan. 18, 2011).

    Finally, plaintiff argues that the administrative law judge erred in failing to order a consultative examination. *Statement of Errors*, pp. 15-16. Plaintiff argues that a consultative examination was necessary because there is no evidence in the record to refute Dr. Hayes' opinion. *Id*. Plaintiff's argument is not well taken.

16

"[T]he regulations do not require an ALJ to refer a claimant to a consultative specialist, but simply grant [her] the authority to do so if the existing medical sources do not contain sufficient evidence to make a determination.'" *Moon v. Sec'y of Health & Human Servs.*, 923 F.2d 1175, 1183 (6th Cir. 1990) (quoting *Landsaw v. Sec'y of Health & Human Servs.,* 803 F.2d 211, 214 (6th Cir. 1986)). *See also* 20 C.F.R. §§ 404.1517(a), 416.917(a). Here, the administrative law judge found "no basis for a consultative examination, as there is simply insufficient evidence to support [plaintiff's] allegations and the consultative examination by Dr. Hayes is not persuasive for the reasons discussed [in the administrative law judge's decision.]" *PAGEID* 63. The Court finds no error in this regard.

Having carefully considered the entire record in this action, the Court concludes that the decision of the Commissioner is supported by substantial evidence. It is therefore **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED** and that this action be **DISMISSED**.

If any party seeks review by the District Judge of this *Report and Recommendation*, that party may, within fourteen (14) days, file and serve on all parties objections to the *Report and Recommendation*, specifically designating this *Report and Recommendation*, and the part thereof in question, as well as the basis for objection thereto. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to *de novo* review by the District Judge and of the right to appeal the decision of the District Court adopting the *Report and Recommendation*. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Smith v. Detroit Fed'n of Teachers, Local 231 etc.*, 829 F.2d 1370 (6th Cir. 1987); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).


September 3, 2014 	*s/Norah McCann King*
	Norah M$^{c}$Cann King
	United States Magistrate Judge